## UNITED STATES DISTRICT COURT DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| ANN KLINGE,<br>an Individual | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | Case No. |
| FRANK CIRCELLI, an individual,<br>GEM SHOPPING NETWORK, Inc,<br>an Georgia corporation, and<br>PRECISION GEM LAB, INC<br>a Georgia corporation | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | AMOUNT CLAIMED: $640,590.92,<br>plus interest, cost and attorney fees<br><br>**JURY TRIAL DEMANDED** |
| Defendants. | ) <br> ) | |

### COMPLAINT FOR DAMAGES

Now comes Plaintiff, ANN KLINGE, an individual residing in Washington County, Minnesota and brings this action against Defendants FRANK CIRCELLI, an individual residing in Georgia; GEM SHOPPING NETWORK, INC., a Georgia corporation and PRECISION GEM LAB, INC. a Georgia corporation, demanding a trial by jury and alleges as follows:

### INTRODUCTION

1. Plaintiff Ann Klinge brings this action to recover monies that she spent on Gemstones fraudulently advertised and misrepresented by the Defendants as being "top gem world class" or "top gem quality" Gemstones.   In reality, Defendants GEM Shopping Network ("GSN"), Frank Circelli, and Precision Gem Lab provided the Plaintiff with inflated appraisals to induce Plaintiff to purchase Gemstones that were valued at significantly less than the GSN appraisal value in the market place. Plaintiff

SCANNED

SEP 1 7 2012

U.S. DISTRICT COURT ST. PAUL

asserts a damage claim for all of the items she purchased from GSN, which are listed in Exhibit A.

## THE PARTIES

2. Plaintiff ANN KLINGE is an individual residing in Washington County, Minnesota and a resident in the District and Division. Ms. Klinge purchased Gemstones from Defendants GEM Shopping Network and Frank Circelli from October 2009 – July 2010.

3. Defendant FRANK CIRCELLI is an individual upon information and belief residing in the State of Georgia.

4. Defendant GEM SHOPPING NETWORK, INC. is a corporation organized under the laws of the State of Georgia and with its principal place of business at 3259 Duluth Highway 120, Duluth, GA 30096.  Defendant has had sufficient minimum contacts with Minnesota, broadcast a full-time satellite and cable television show on Direct TV channel 228 in Minnesota and nationwide, promotes and sells its products in Minnesota and nationwide on http://www.gemshopping.com/, markets, delivers, and promotes, and advertises its products to consumers in Minnesota and throughout the United States and/or otherwise has intentionally availed itself of the market in Minnesota through the promotion, marketing and sale of its products in Minnesota, so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

5. Defendant PRECISION GEM LAB, INC. is a corporation organized under the laws of the State of Georgia and with its principal place of business at 175 West Wieuca Road, Atlanta, GA 30342. Defendant has sufficient minimum contacts with Minnesota,

provides jewelry appraisals to residents in Minnesota and/or otherwise has intentionally availed itself of the market in Minnesota through the promotion, marketing and sale of its products in Minnesota, so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the Plaintiff Ann Klinge and Defendants Frank Circelli, Gem Shopping Network, Inc. and Precision Gem Lab, Inc. are citizens of different states (Defendants Frank Circelli, Gem Shopping Network, Inc. and Precision Gem Lab, Inc. are citizens of Georgia and Plaintiff is a citizen of Minnesota) and the amount in controversy exceeds $75,000, exclusive of interest and cost.

7. Venue is proper in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1391(c), § 1391(a)(2), and 1400(a), because a substantial part of the events giving rise to the claims occurred in this judicial district and division; and because Defendants Frank Circelli, Gem Shopping Network, Inc. and Precision Gem Lab, Inc. and Plaintiff are subject to personal jurisdiction in this judicial district and division. At all relevant times, Defendants marketed and sold its products to purchasers in Minnesota, including but not limited to Washington County.

## FACTS

8. Plaintiff is a 61 year old female. In order to supplement her income Plaintiff decided to start a jewelry business. She was encouraged to start a jewelry business by GEM Shopping Network Customer Service manager, Kenny Brown.

9. In January 2010, Plaintiff filed Articles of Organization for Ann Michele's Jewelry and Gemstones LLC with the State of Minnesota.

10. In July of 2009, Plaintiff started watching GSN and purchased items for her personal use. In October of 2009, Plaintiff spoke to Mr. Brown and asked if she could buy items from GEM Shopping Network and resell it to other individuals. Based on Mr. Brown's recommendation in October 2009, Plaintiff started buying inventory from GEM Shopping Network for her jewelry business.

11. From July 2009, to the present Defendants Frank Circelli and Gem Shopping Network, Inc. sold Gemstones, which it described as among the rarest stones on the face of the earth and the most collectible Gemstones.

12. Plaintiff was a novice gemstone dealer and still learning the industry. Through her conversations with GSN Customer Sales manager, Kenny Brown, Plaintiff came to trust and have high regard for Mr. Brown. As a result, Plaintiff relied on the statements and representation of Mr. Brown when purchasing inventory for her business.

13. Mr. Brown recommended Gemstones that the Plaintiff should purchase for her inventory. He misrepresented to the Plaintiff that the Gemstones were of a high quality that could be used to start a jewelry business. Mr. Brown also misrepresented to the Plaintiff that the Gemstones would resell for more than the purchase price paid by the Plaintiff.

14. During one telephone conversation, Mr. Brown told Plaintiff he went to the mall and priced colored changed garnets ("CCG") to prove to himself and to be able to

4

tell Plaintiff that he was not just taking the GSN Host word about the value and rarity of the colored changed garnets.

15. In February, 2010, Mr. Brown called Plaintiff at home to solicit her a red Tanzanian Spinel valued at $185,000. Mr. Brown represented to the Plaintiff that the Tanzanian Spinel was of high quality. Plaintiff had never heard of this gemstone prior to Mr. Brown's call. Plaintiff trusted Mr. Brown and relied on his representations.

16. During the call, Mr. Brown stated that a private dealer would be coming into look at the Tanzanian Spinel. He further explained that GSN had an obligation to offer the stone to the public and the network would show the stone at 1:00pm that day. He said that it would be a major upset if Plaintiff purchased the gemstone, because no one would expect a member of buying public to out bid a private dealer.

17. Plaintiff turned her television on at 1:00pm and watch the GEM Shopping Network episode advertising a 7.56 Super Neon Tanzanian Spinel. The GEM Shopping Network host misrepresented the value of the Neon Tanzanian Spinel by stating it was valued at $185,000.

18. Ms. Klinge called in and purchase the Tanzanian Spinel for $70,000 based on Mr. Brown's representation that the stone was of a high quality and an item she needed for her business inventory. (**See** – Invoice #705547-1).

19. GEM Shopping Network misrepresented the quality of the gemstone on the Plaintiff's invoice they described the 7.56 Pink Spinel as "7.56ct Super Neon Tanzanian

Spinal Oval Top Gem World Class (Extremely Rare – Frank's Personal Collection)" (**See** – Invoice # 705547-1).

20. Defendant GEM Shopping Network's website provides a live feed of its televised broadcast.

21. Defendant GEM Shopping Network touted, on a national television broadcast around the country, that the Gemstones are "Top Gem Quality," or "Top Gem World Class." The following is a summary of misrepresentations made by various GEM Shopping Network Hosts during televised broadcast, which induce the Plaintiff to purchase certain Gemstones:

- **Tsavorite Garnet** - In an October 2009 broadcast, a GEM Shopping Network host misrepresented the value of Tsavorite Garnet by saying the stone was valued at $74,800. Plaintiff relied on the misrepresentations made by the GEM Shopping network host and purchased a 6.12ct Tsavorite Garnet for $38,250. (**See** – Invoice # 681152-1). Further, GSN misrepresented the quality of the gemstone on the Plaintiff's invoice they described the Tsavorite Garnet as "6.12ct Tsavorite Garnet Portuguese Round Top Gem World Class Ultra Rare." (**See** – Invoice # 681152-1).

- **Chrysoberyl Alexandrite** - In October 2009, a GEM Shopping Network host misrepresented the value of the Chrysoberyl Alexandrite by saying it was valued at $40,100. Plaintiff relied on the misrepresentations made by the GEM Shopping network host and purchased a 2.08ct Chrysoberyl Alexandrite for $18,000. (**See** – Invoice #681152-1). GSN further misrepresented the quality of the gemstone on

the Plaintiff's invoice they described the Chrysoberyl Alexandrite as "2.08 Brazilian Alexandrite Cushion Top Gem World Class 99% Color Change" (**See** – Invoice # 681152-1).

- **Tanzanite** - In December 2009, a GSN Network host misrepresented the value of the Tanzanite by saying it was valued at $20,450.   Plaintiff relied on the misrepresentations made by the GEM Shopping Network host and purchased an 8.19ct Tanzanite for $5,500 in December 2009. (**See** – Invoice # 694529-1).  GSN further, misrepresented the quality of the gemstone on the Plaintiff's invoice they described the 8.19ct Tanzanite as "8.19ct Dark Super Neon Tanzanite Cushion Top Gem World Class" (**See** – Invoice # 694529-1).

- **4.58ct Pink Spinel** - In January 2010, a GEM Shopping Network host misrepresented the value of the Hot Natural Spinel by stating it was valued at $14,050.   Plaintiff relied on the misrepresentations made by the GEM Shopping Network host and purchased the Hot Natural Spinel for $5,500 in December 2009. (**See** – Invoice #695754-1). GSN further, misrepresented the quality of the gemstone on the Plaintiff's invoice they described the 4.58ct Pink Spinel as "4.586ct Hot Pink Natural Spinel Roval Top Gem World Class" (**See** – Invoice # 695754-1).

- **3.89ct African Paraiba Tourmaline** - In January 2010, a GEM Shopping Network host misrepresented the value of the Nigerian Paraiba Tourmaline by stating it was valued at $24,550.  Plaintiff relied on the misrepresentations made by the GEM Shopping Network host and purchased the Nigerian Paraiba

Tourmaline for $7,500 in December 2010. (**See** – Invoice #702351 -1). GSN further misrepresented the quality of the gemstone on the Plaintiff's invoice they described the 3.89ct Nigerian Paraiba Tourmaline as "3.89ct Nigerian Paraiba Tourmaline Oval Top Gem World Class" (**See** – Invoice #702351-1).

22. When discussing Tourmalines during a televised broadcast GSN Hosts Sky and Rafi stated that Tourmalines were going way way up in price.

23. In another Gem Shopping Network Broadcast Hosts Wes and Allen, stated Paraiba wholesales at 5k a ct. and 10 to 12k retail per ct. They said that Paraibas had been mined out with no new finds and therefore prices will go hog wild. They stated that Mandarin Garnets were becoming extinct because they had stopped mining them when the material became inferior.

24. GSN Host Steve represented in a television broadcast that, "there is not a lot of green Tourmaline for sale in the world because there is no rough out there. China had gotten a hold of everything. They bought up all the rough in Brazil. Its crazy. They want all our Tourmaline." He had a 25 ct. green tourmaline prettier than any museum piece list price 22,505. Sale price 12,900. Steve asked Rafi "what is your absolute bottom price" and Rafi said 11,900. And Rafi told the audience that this "stone could not be replaced because there was no more of it. It came from an estate sale in Boca Raton, FL. This stone is trying to be a Paraiba." "You will never see anything like it again in our lifetime." Ben Ko the gem cutter says no rough is coming out of Brazil. "What is coming out of Africa is mediocre. The only people who can afford to work with

tourmalines are successful designers with deep pockets. Elsewhere this ring would be 35k not 11,900."

25. In another Gem Shopping Network Broadcast hosts Hunter and Earl, stated, Tanzanian Spinel from the Mahangay deposit. 1.5 vivid red orange the appraisal was 10,050 and the asking price was 6,895. Limited supply of production in sizes over 1 carat, faceted, are difficult to come by. This material sells for 2,500 per carat because there is no more production.

26. In a different broadcast, Defendant GEM Shopping network misrepresented the Color Changing Garnet as products that were mined out and would soon rival the price of alexandrite.

27. Defendant on its television network promoted the Gemstones for their purported resale value.

28. GSN showed appraisals of the Gemstones on the televised broadcast. GSN stated numerous times the appraisals were done by an independent appraiser outside of the company. Plaintiff believed the appraisals were accurate and true.

29. GEM Shopping Network provided the Plaintiff with a free appraisal of several Gemstones. The appraisal was performed by Precision Gem Lab, Inc., which is owned by George Houghtaling II, a former manager at GEM Shopping Network.

30. Defendant Precision Gem Lab Inc.'s appraisals inflated and misrepresent to Plaintiff the value and quality of the following Gemstones:

- misrepresented the valued of the 6.12ct Tsavorite Garnet at $74,800. Additionally, misrepresented the quality of the gemstone by stating, "Clarity: FI (free of eye visible inclusion) Type II" (**See Exhibit C** – Precision Gem Lab Tsavorite Garnet Appraisal).

- misrepresented the value of the 2.08 Chrysoberyl Alexandrite at $40,100. (**See Exhibit D** – Precision Gem Lab Chrysoberyl Alexandrite Appraisal).

- misrepresented the value of the 8.19ct Tanzanite at $20,450. Additionally, misrepresented the quality of the Tanzanite when it stated "Clarity: FI (free of eye visible inclusion) Type I" (**See Exhibit E** – Precision Gem Lab Tanzanite Appraisal).

- misrepresented the value of the 2.75cts LR Opal Black at $14,050

- misrepresented the value of the 10.19cts Red Tourmaline at $33,850

- misrepresented the value of the 11.44cts Neomint Tourmaline at $22,750

- misrepresented the value of the 7.56cts Tanz Oval at $185,400

- misrepresented the value of the 4.58cts Spinel Roval at $14,050

- misrepresented the value of the 3.25cts Color Change Garnet at $25,050

31. In February 2010, Plaintiff took all the Gemstones she had purchased from GSN up to that point to the Tucson, Arizona Gem Show. The Plaintiff had her collection

of Gemstones evaluated by Bill Vance a GIA Certified gemologist, who was also selling Gemstones at the Show.

32. The gemologist evaluated Plaintiff's Tanzanian Spinel and said it was worth half of what of what she paid and that the right side of it had three different types of inclusions. GSN sold the Gemstone to the Plaintiff as being one of high quality.

33. Next, the gemologist evaluated the Plaintiff's Color Changed Garnets ("CCG's"). He said the Plaintiff's CCG's were very dark. He also informed the Plaintiff that the CCG Gemstones had not been mined out, as GSN had misrepresented to the Plaintiff.

34. Plaintiff also had a Color Change Garnet appraiser recommend by the GIA come to her home to appraise the CCG's. The appraiser refused to appraise the Gemstones saying, the Plaintiff had paid way too much for them and an appraisal would do her no good from a selling standpoint.

35. Plaintiff hired William Korst, Jr. an experienced gemologist, GIA certified appraiser, and owner of World Gem Resources, Ltd, which is based in Minneapolis Minnesota to evaluate six Gemstones Plaintiff had purchased from GSN. Mr. Korst appraisal stated the following:

- World Gem valued the 6.12ct Tsavorite Garnet at $33,660. The appraisal also stated the clarity of the Tsavorite Garnet to be, "Ll1 (very lightly included)." (**See Exhibit F** – World Gem Resource Tsavorite Garnet Appraisal).

- World Gem valued the 2.08ct Chrysoberyl Alexandrite at $15,600. (**See Exhibit G** – World Gem Resource Chrysoberyl Alexandrite Appraisal).

- World Gem valued the 8.19 ct Zoisite tanzanite at $5,324. The appraisal also stated the clarity of the Zoisite Tanzanite to be, "Ll1 (very lightly included) Several abrasions on pavilion facet junctions." (**See Exhibit H** – World Gem Resource Appraisal).

- World Gem valued the 7.56ct Pink Spinel at $64,260. The appraisal also stated the clarity of the Pink Spinel to be, "Ll1 (very lightly included) cutlet area is abraded." (**See Exhibit I** – World Gem Resource Appraisal). The World Gem appraisal also noted, "The stone can be said to have a moderately strong neon appearance."

- World Gem valued the 4.58ct Pink Spinel at $4,580. The appraisal also stated the clarity of the Pink Spinel to be, "Ll2 (lightly included) Several abrasions on crown facet junctions and a number of abrasions on pavilion facet junctions" (**See Exhibit J** – World Gem Resource Appraisal).

- World Gem valued the 3.89ct Nigerian Paraiba Tourmaline at $4,580. The appraisal also stated the clarity of the Pink Spinel to be, "Ll2 (lightly included) Several abrasions on crown facet junctions and a number of abrasions on pavilion facet junctions" (**See Exhibit K** – World Gem Resource Appraisal).

36. Defendants Frank Circelli, Gem Shopping Network, Inc., and Precision Gem Lab, Inc. are sophisticated and knowledgeable gemologists, who knew or should have

known that the Gemstones it appraised were valued at substantially less than the appraisal value they represented to customers. Further Defendants knew or should have known the quality of the Gemstones were not "Top Gem Quality," or "Top Gem World Class."

37. Defendants GEM Shopping Network, Frank Circelli, and Precision Gem Lab Inc.'s actions were in direct contravention to the Federal Trade Commission's ("FTC") Guides for the Jewelry, Precious Metals, and Pewter Industries. Available at: http://www.ftc.gov/bcp/guides/jewel-gd.shtm. The FTC declares it "unfair or deceptive to misrepresent the type, kind, grade, quality, quantity, metallic content, size, weight, cut, color, character, treatment, substance, durability, serviceability, origin, price, value, preparation, production, manufacture, distribution, or any other material aspect of an industry product." FTC Guide §23.1. The Defendants violated this provision.

38. The FTC guidelines also make clear that it is unfair and deceptive to "use, as part of any advertisement, packaging material, label, or other sales promotion matter, any visual representation, picture, televised or computer image, illustration, diagram, or other depiction which, either alone or in conjunction with any accompanying words or phrases, misrepresents the type, kind, grade, quality, quantity, metallic content, size, weight, cut, color, character, treatment, substance, durability, serviceability, origin, preparation, production, manufacture, distribution, or any other material aspect of an industry product." FTC Guide §23.2. Defendants violated this provision.

39. Defendants' failures to comply with the pertinent FTC provisions evidences Defendants' violation of the UCC Implied Warranty of Fitness for a Particular Purpose, UCC Implied Warranty of Merchantability, Minnesota Uniform Deceptive Trade Practice

Act.  It also evidences Tortious Interference with Prospective Economic Relations, Intentional and Negligent Misrepresentation to the Defendants, and unjust enrichment to the Defendants.

## COUNT 1 – CLAIM FOR RELIEF
### (Intentional Misrepresentation)
**(Against Defendants Frank Circelli, Gem Shopping Network, Inc., Precision Gem Lab, Inc.)**

40. Plaintiffs realleges and hereby incorporates by reference the allegations set forth in paragraphs 1 - 40 of this Complaint as if they were fully set forth herein.

41. At all times herein mentioned, Defendants were in engaged in the business of, *inter alia*, selling and appraising jewelry.  At all times herein mentioned, Defendants represented to Plaintiff that the Gemstones had a value and qualities that they did not have.

42. Defendants' representations herein alleged were untrue in that the Gemstones sold did not have the characteristics, qualities and value stated.

43. Plaintiff reasonably relied on Defendants' representation.   At the time Defendants made the representations herein alleged, Defendants knew the representations were false.

44. Defendants made the representations herein alleged with the intention of inducing the Plaintiff to purchase the Gemstones

45. As a proximate result of Defendants' intentional misrepresentations, Plaintiff has suffered injury in fact and has suffered an economic loss by *inter alia*, 1) purchasing inferior products whose characteristics render them of a lesser value than represented and 2) incurring cost for diminished resale value of the products purchased.

46. WHEREFORE, the Plaintiff request this Honorable Court for a judgment in

her favor against FRANK CIRCELLI, GEM SHOPPING NETWORK, INC., and PRECISION GEM LAB, INC. jointly and severally and to award the Plaintiff:

     a.     compensatory damages in excess of $640,590.92;

     b.     reasonable attorney's fees;

     c.     costs; and/or,

     d.     other relief deemed just and equitable by the Court.

**COUNT 2 – CLAIM FOR RELIEF**
**(Negligent Misrepresentation)**
**(Against Defendants Frank Circelli, Gem Shopping Network, Inc., Precision Gem Lab, Inc.)**

47. Plaintiff realleges and hereby incorporates by reference the allegations set forth in paragraphs 1 -47 of this Complaint as if they were fully set forth herein.

48. At the time Defendants made the misrepresentations herein alleged, Defendants had no reasonable grounds for believing the representations to be true and intended for consumers to rely on the representations.

49. Plaintiff has suffered injury in fact and has suffered an economic loss by, *inter alia*, 1) purchasing inferior products whose characteristics render them of a lesser value than represented and 2) incurring cost for diminished resale value of the products purchased.

50. WHEREFORE, the Plaintiff request this Honorable Court for a judgment in her favor against FRANK CIRCELLI, GEM SHOPPING NETWORK, INC., and PRECISION GEM LAB, INC. jointly and severally and to award the Plaintiff:

     a.     compensatory damages in excess of $640,590.92;

     b.     reasonable attorney's fees;

c.      costs; and/or,

d.      other relief deemed just and equitable by the Court.


**COUNT 3 – CLAIM FOR RELIEF**
**(For Violation of the UCC Implied Warranty of Fitness for a Particular Purpose)**
**(Against Defendants Frank Circelli and Gem Shopping Network, Inc.)**

51. Plaintiff realleges and hereby incorporates by reference the allegations set forth in paragraphs 1 -51 of this Complaint as if they were fully set forth herein.

52. This claim is brought pursuant to the Uniform Commercial Code, Section 2-315, et. seq. and Minnesota Implied Warranty; Fitness for Particular Purpose Statute, et. seq. MINN. STAT. 336.2-314 (2012).

53. Defendants impliedly warranted to persons purchasing their products that the products were what they were represented to be and fit for a particular purpose.

54. These implied warranties induced the Plaintiff in particular to purchase the Gemstones from the Defendants.  These implied warranties were both directly and indirectly believed and relied upon by Plaintiff and induced Plaintiff to choose Defendants' Gemstones.  This reliance was justified because of Defendants' skill, expertise, and judgment in appraising, distributing and selling Gemstones.

55. At the time of the sale, Defendants had knowledge of the purpose for which their products were purchased and impliedly warranted the same to be, in all respects, fit and proper for this purpose.

56. Defendants breached their aforesaid warranties in that the products were not fit for the purpose for which they were intended and used; rather Defendants sold to Plaintiff products which were not fit for use.

57. Plaintiff notified Defendants of the breach of the implied warranties within a reasonable time after it was discovered.

58. Plaintiff has suffered injury in fact and has suffered an economic loss by, *inter alia*, 1) purchasing inferior products whose characteristics render them of lesser value than represented and 2) incurring cost for diminished resale value of the products purchased.

59. WHEREFORE, the Plaintiff request this Honorable Court for a judgment in its favor against FRANK CIRCELLI and GEM SHOPPING NETWORK, INC., jointly and severally and to award the plaintiff:

      a.      compensatory damages in excess of $640,590.92;

      d.      reasonable attorney's fees;

      c.      costs; and/or,

      d.      other relief deemed just and equitable by the Court.

### COUNT 4 – CLAIM FOR RELIEF
**((For Violation of the UCC Implied Warranty of Merchantability)**
**(Against Defendants Frank Circelli and Gem Shopping Network, Inc.)**

60. Plaintiff realleges and hereby incorporates by reference the allegations set forth in paragraphs 1 -60 of this Complaint as if they were fully set forth herein.

61. This claim is brought pursuant to the Uniform Commercial Code, Section 2-314, *et. seq.* and the Minnesota Implied Warranty; Merchantability; Usage of Trade Statute, *et. seq.* MINN. STAT. 336.2-314 (2012).

62. Defendants impliedly warranted to persons purchasing their products that the products were what they were represented to be and merchantable.

63. These implied warranties induced the Plaintiff in particular to purchase the Gemstones from the Defendants.  These implied warranties were both directly and indirectly believed and relied upon by Plaintiff and induced Plaintiff to choose Defendants' Gemstones.  This reliance was justified because of Defendants' skill, expertise, and judgment in appraising, distributing and selling Gemstones.

64. At the time of the sale, Defendants had knowledge about the quality of the Gemstones sold to the Plaintiff.

65. Defendants breached their aforesaid warranties in that the products were not of the quality and value represented to the Plaintiff; rather Defendants sold to Plaintiff a product which was not fit for use.

66. Plaintiff notified Defendants of the breach of the implied warranties within a reasonable time after it was discovered.

67. Plaintiff has suffered injury in fact and has suffered an economic loss by, *inter alia*, 1) purchasing inferior products whose characteristics render them of lesser value than represented and 2) incurring cost for diminished resale value of the products purchased.

68. WHEREFORE, the Plaintiff request this Honorable Court for a judgment in its favor against FRANK CIRCELLI and GEM SHOPPING NETWORK, INC., jointly and severally and to award the plaintiff:

a.      compensatory damages in excess of $640,590.92;

b.      reasonable attorney's fees;

c.      costs; and/or,

d.      other relief deemed just and equitable by the Court.

## COUNT 5 – CLAIM FOR RELIEF
**(For Violation of Minnesota Deceptive Trade Practices Act, Minn Stat. 325D.44)**
**(Against Defendants Frank Circelli, Gem Shopping Network, Inc., and Precision Gem Lab, Inc.)**

69. Plaintiffs realleges and hereby incorporate by reference the allegations set forth in paragraphs 1 -69 of this Complaint as if they were fully set forth herein.

70. This claim is brought pursuant to the Minnesota Deceptive Trade Practices Act, 325D.44 *et. seq*. MINN. STAT. 325D.44 (2012)

71. Defendants are a "person" within the meaning of the statute and sell "goods" within the meaning of statute.

72. Plaintiff is a consumer within the meaning of the statute.

73. The subject Gemstones under the statute constitute "goods."

74. Plaintiff purchase of the Gemstones from the Defendants Gem Shopping Network and Frank Circelli constitutes a transaction within the meaning of the statute.

75. Defendants' conduct violated and constitutes a violation of the Minnesota Deceptive Trade Practice Act in the following respect:

a.  "In violation of Section 325D.44, Defendant represented that goods are of a particular standard, quality or grade when they are of another."

76. Specifically, Defendants' acts and practices constitute unlawful business practices in violation of the Minnesota Deceptive Trade Practices Act, 325D.44 *et. seq*. because Defendants' misrepresented the quality of the following Gemstones: Tsavorite Garnet, Chrysoberyl Alexandrite, Ziosite Tanzanite, Neon Pink Tanzanian Spinel, Hot Natural Spinel, and other gemstones purchased by the Plaintiff, which is listed on Exhibit

A while in the course of business.

77. Defendant engaged in these unfair and or deceptive acts and practices with the intent that they result, and which did result in the sale of the Gemstones to the Plaintiff.

78. In purchasing the Gemstones from Defendant, Plaintiff reasonably believed and/or depended on the material false and/or misleading information provided by Defendant with respect to the value, quality and gemological make-up of the Gemstones. In other words, Defendant induced Plaintiff to purchase the Gemstones through the acts and omissions alleged herein.

79. Defendants had knowledge of the deceptive methods, acts or practices declared to be unlawful by the Minnesota Deceptive Trade Practices Act.

80. Plaintiff has suffered injury in fact and have suffered an economic loss by, *inter alia*, 1) purchasing inferior products whose characteristics render them of a lesser value than represented and 2) incurring cost for diminished resale value of the products purchased.

81. WHEREFORE, the Plaintiff request this Honorable Court for a judgment in its favor against FRANK CIRCELLI, GEM SHOPPING NETWORK, INC., and PRECISION GEM LAB, INC. jointly and severally and to award the plaintiff:

   a.     compensatory damages in excess of $640,590.92;

   b.     reasonable attorney's fees;

   c.     costs; and/or,

   d.     other relief deemed just and equitable by the Court.

### COUNT 6 – CLAIM FOR RELIEF
**(For Tortious Interference with Prospective Economic Relations)**
**(Against Defendants Frank Circelli, Gem Shopping Network, Inc. and Precision**

**Gem Lab, Inc.)**

82. Plaintiff realleges and hereby incorporates by reference the allegations set forth in paragraphs 1 - 82 of this Complaint as if they were fully set forth herein.

83. As alleged herein, Plaintiff had a reasonable expectation of entering into valid business relationships with prospective customers and vendors.  Further, the Plaintiff had reasonable expectations of expanding her business relationships with customers and vendors. (the "Expectancies").

84. The Defendants, knew of the Plaintiff's Expectancies at all relevant times, as Plaintiff communicated she was purchasing the Gemstones for her jewelry business during phone conversations with GEM Shopping Network.

85. The Defendants purposefully interfered with the Plaintiff's Expectancies by knowingly selling her Gemstones worth less than the appraisal value provided by GEM Shopping Network and Precision Gem Lab, and by otherwise seeking to disrupt such Expectancies or to prevent them from ripening.

86. As a direct and proximate result of the Defendants tortious interference, the Plaintiff has suffered compensatory damages to be proven at trial.

87. The Defendants' tortious interference was willful and calculated.

88. WHEREFORE, the Plaintiff request this Honorable Court for a judgment in its favor against FRANK CIRCELLI and GEM SHOPPING NETWORK, INC., jointly and severally and to award the plaintiff:

    a.    compensatory damages in excess of $640,590.92;

    b.    reasonable attorney's fees;

    c.    costs; and/or,

d.      other relief deemed just and equitable by the Court.

## COUNT 7 – CLAIM FOR RELIEF
### (For Unjust Enrichment)
### (Against Defendants Frank Circelli and Gem Shopping Network, Inc.)

89. Plaintiff realleges and hereby incorporate by reference the allegations set forth in paragraphs 1 - 89 of this Complaint as if they were fully set forth herein.

90. Pleading in the alternative, by engaging in conduct described in this Complaint, Defendant has been enriched at the expense of Plaintiff by its sale of Gemstones by the use of deceptive conduct and advertising.

91. As a proximate result of Defendant's unlawful, unfair, and deceptive conduct, Defendant has obtained revenues by which they became unjustly enriched at Plaintiff's expense.

92. Defendant was aware and had knowledge of the benefit it was receiving as a result of its unlawful, unfair, deceptive, and wrongful acts, as hereinabove alleged, and have enjoyed the benefit of their financial gains, to the detriment and at the expense of Plaintiff.

93. Under the circumstances alleged herein, it would be unfair and inequitable for Defendant to retain the profits it has unjustly obtained at the expense of the Plaintiff.

94. Accordingly, Plaintiff seeks an order establishing Defendants as constructive trustees of the profits that served to unjustly enrich them, together with interest during the period in which Defendants have retained such funds, and requiring Defendant to disgorge those funds to Plaintiff in a manner to be determined by the Court.

95. WHEREFORE, the Plaintiff request this Honorable Court for a judgment in its favor against FRANK CIRCELLI and GEM SHOPPING NETWORK, INC. jointly

and severally and to award the plaintiff:

      a.    compensatory damages in excess of $640,590.92;

      b.    the imposition of a constructive trust;

      c.    costs; and/or,

      d.    other relief deemed just and equitable by the Court.

## PRAYER FOR RELIEF

96. WHEREFORE, the Plaintiff request this Honorable Court for a judgment in its favor against FRANK CIRCELLI, GEM SHOPPING NETWORK, INC., and PRECISION GEM LAB, INC. jointly and severally and to award the Plaintiff:

a. an award of compensatory damages sustained by Plaintiff as a result of Defendants' unlawful acts and conduct;

b. an award of punitive damages;

c. an award or restitution, disgorgement and/or other equitable relief as this Honorable Court deems proper;

d. an award of reasonable attorney's fees and cost or suit, including expert witness fees;

e. an award of pre- and post-judgment interest on any amounts awarded; and

f. Defendants be preliminarily and permanently enjoined from engaging in the unlawful; unfair and fraudulent acts and practices alleged herein;

g. For any and all other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial in this action for all the claims so triable

Dated: September 19, 2012

                          **Respectfully submitted,**

                          **ANN KLINGE**
                          Plaintiff

By: _____
                    Plaintiff

Ann Klinge
3815 Rivera Circle
White Bear Lake, MN 55110


Dated September 7, 2012