UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ann Klinge, an individual,

       Plaintiff,

v.                                                                               Case No. 12-cv-2392 (JNE/SER)
                                                                         ORDER

Gem Shopping Network, Inc.,
a Georgia Corporation,

       Defendant.

       Plaintiff Ann Klinge is a Minnesota resident who purchased goods from Defendant Gem Shopping Network, Inc. (GSN), a Georgia corporation with its principal place of business in Georgia that sells gemstones and jewelry through its 24-hour television channel. Klinge alleges that GSN violated several Minnesota consumer protection and trade practices statutes and committed intentional and negligent misrepresentation. This matter is before the Court on Defendant's motion for summary judgment.

## BACKGROUND

       Klinge began watching and purchasing items from GSN in July 2009. In the fall of 2009, Klinge spoke with Kenny Brown, a customer service representative for GSN. Brown told Klinge about a customer who bought gemstones from GSN and later, after losing a job, began selling them "a stone here and a stone there" to "stay afloat." Klinge decided to form a business in which she would purchase items from GSN and resell them. Klinge formed Ann Michele's Jewelry and Gemstones, LLC in January 2010. Klinge attended a trade show in Tucson, Arizona in February 2010 to learn how to sell jewelry. At the show, a vendor told Klinge that she had paid too much for some gems and that some of GSN's appraisals were too high. Klinge attended a second trade show in Phoenix in April 2010, where she sold one item. Klinge continued to

purchase items from GSN until July 2010, though she never attempted to sell her items after the Phoenix trade show. From July 2009 to July 2010, Klinge purchased and kept approximately $675,334 worth of gemstones and jewelry from GSN. She purchased and periodically returned other gems under GSN's thirty-day, no questions asked return policy.

Klinge filed this lawsuit on September 17, 2012 and an amended complaint on March 6, 2013. GSN moved for summary judgment on October 10, 2014. For the reasons set forth below, Defendant's motion for summary judgment is granted and Plaintiff's claims are dismissed.

## SUMMARY JUDGMENT STANDARD

The standards applicable to summary judgment are well established and well known. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must view facts that the parties genuinely dispute in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**DISCUSSION**

The first four counts in the amended complaint are for violations of Minnesota's consumer protection and trade practices laws. Counts five and six are for intentional and negligent misrepresentation.

### A. Count I—Unfair Trade Practices

Plaintiff alleges that Defendant violated the Minnesota Unfair Trade Practices Act (MUPTA), Minn. Stat. § 325D.09 *et seq*, by holding itself out as a retailer that sells items at approximately wholesale prices or less than usual retail prices. MUPTA states:

> (1) No person engaged in the sale of merchandise at retail shall, in connection with such business, misrepresent the true nature of such business, either by use of the words manufacturer, wholesaler, broker, or any derivative thereof . . . . (2) No person shall, in connection with the sale of merchandise at retail misrepresent, directly or indirectly, that the price at which such merchandise is sold is an approximately wholesale price, or is less than the usual retail price[.]

Minn. Stat. § 325D.12

MUPTA defines "sale of merchandise at retail" to include "any sale except (1) A sale for the purpose of resale." Minn. Stat. § 325D.10(d). While Plaintiff purchased some items for personal use, this action only concerns items that she purchased for the purpose of resale. When asked at deposition whether "all of the claims in the case, all the stones that you're complaining about in the case are the ones that you purchased for resell [sic] through your business," Plaintiff replied "yes." Thus the transactions at issue were not in connection with sales of merchandise at retail under the statute, and Plaintiff's claim under MUPTA fails.

### B. Count II—Deceptive Trade Practices

Plaintiff alleges a violation of the Minnesota Deceptive Trade Practices Act (DTPA), Minn. Stat. § 325D.43 *et seq*. The DTPA provides: "A person likely to be

3

damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable." Minn. Stat. § 325D.45. The "sole statutory remedy for deceptive trade practices is injunctive relief," and the statute "provides relief from future damage, not past damage." *Gardner v. First Am. Title Ins. Co.*, 296 F. Supp. 2d 1011, 1020 (D. Minn. 2003) (quotation marks omitted). The future harm must be to the plaintiff; it is not sufficient if the harm is to other purchasers or customers. *See Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1071 (D. Minn. 2013).

Plaintiff testified at deposition that her last purchase from Defendant was on July 5, 2010. While Plaintiff asks this Court for injunctive relief, Plaintiff does not assert that she has an ongoing business relationship with Defendant or otherwise intends to purchase gems from Defendant in the future. Thus, Plaintiff has no remedy under the DTPA.

**C. Counts III and IV—Consumer Fraud and False Statements in Advertising**

Plaintiff alleges violations of the Minnesota Consumer Fraud Act (CFA) and the Minnesota False Statements in Advertising Act (FSAA), Minn. Stat. §§ 325F.67, 325F.69. These Acts do not provide for a private cause of action, but the Minnesota Private Attorney General Statute provides a private civil remedy for persons injured by these and other statutes if they can show a public benefit. Minn. Stat. § 8.31, subd. 3(a); *see also Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000). A plaintiff does not have a claim under either the CFA or the FSAA if she is a merchant with respect to the goods at issue. *Marvin Lumber and Cedar Co. v. PPG Industries, Inc.*, 223 F.3d 873, 887–88 (8th Cir. 2000).

In determining whether a public benefit exists, Minnesota courts look to "the degree to which the defendants' alleged misrepresentations affected the public; the form of the alleged misrepresentation; the kind of relief sought; and whether the alleged misrepresentations are ongoing." *Khoday v. Symantec* Corp*.,* 858 F. Supp. 2d 1004, 1017 (D. Minn. 2012). In *Collins v. Minn. Sch. of Bus., Inc.*, 655 N.W. 2d 320, 329–30 (Minn. 2003), the Minnesota Supreme Court held that claims brought by former students of the Minnesota School of Business, alleging that the school made false statements about its sports medicine program, benefitted the public at large because the defendant "made misrepresentations to the public at large by airing a television advertisement" and through numerous sales and information presentations. *Id.* at 330. Like the plaintiffs in *Collins*, Klinge has alleged that she relied on misrepresentations that were made to the public at large through statements broadcast on television. In particular, Klinge purchased color change garnets "based on what they told me on the air" about their scarcity, statements Klinge asserts were untrue. These allegations are sufficient to show a public benefit.

Nevertheless, Plaintiff's claims are barred because she is a merchant with respect to the goods at issue. In *Marvin Lumber*, the Eighth Circuit stated that "our conclusion that Marvin is a merchant with respect to [the goods at issue] quickly disposes of Marvin's claim under [the CFA]," and held that the same reasoning applied to Marvin's FSAA claim. 223 F.3d at 887–88. Plaintiff attempts to avoid the outcome in *Marvin Lumber* by arguing that she, unlike Marvin, is not a sophisticated merchant because she never held herself out as someone who had knowledge or skill peculiar to jewelry and gemstones. But specialized expertise is not necessary to become a merchant under Minnesota law or to come within the holding in *Marvin Lumber*. Someone becomes a

merchant under Minnesota law either by dealing in goods of the kind or by specialized expertise. Minn. Stat. § 336.2–104 (defining merchant as "a person who deals in goods of the kind or otherwise by occupation holds out as having knowledge or skill peculiar to the practices or goods involved"); *see also Regents of Univ. of Minn. v. Chief Indus. Inc.*, 106 F.3d 1409, 1411 (8th Cir. 1997) (discussing the two distinct ways to become a merchant under Minnesota law). Plaintiff became a merchant not by dint of her expertise but by her formation of a business dealing in gems and jewelry. Under *Marvin Lumber*, the CFA and FSAA do not apply to a plaintiff like Klinge who is a merchant with respect to the goods at issue.

### D. Count V—Intentional Misrepresentation

Plaintiff asserts a claim for intentional or fraudulent misrepresentation. To establish this claim, Plaintiff must show: (1) the defendant made a false representation about a past or present material fact that was susceptible of knowledge; (2) the defendant knew the representation was false or asserted it without knowing whether it was true or false; (3) the defendant intended to induce the plaintiff to act and the plaintiff was induced to act in reliance on the representation; and (4) the plaintiff was damaged as a result. *See M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn. 1992). "A plaintiff's failure to demonstrate a genuine issue of material fact on even a single element of fraud is sufficient for a court to grant summary judgment in defendant's favor." *Shukh v. Seagate Tech., LLC*, No. 10–404, 2013 WL 1197403, at *14 (D. Minn. Mar. 25, 2013) (citing *Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.W. 2d 359, 368–69 (Minn. 2009)).

To satisfy the first element, Plaintiff may show "false descriptions of specific or absolute characteristics of a product." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175,

1180 (8th Cir. 1998). Puffery is not actionable. *Id.* "Puffery exists in two general forms: (1) exaggerated statements of bluster or boast upon which no reasonable consumer would rely; and (2) vague or highly subjective claims of product superiority, including bald assertions of superiority." *Am. Italian Pasta Co. v. New World Pasta Co.,* 371 F.3d 387, 390–91 (8th Cir. 2004). Moreover, a plaintiff's reliance on the representations must be both actual and reasonable. *Hoyt Props., Inc. v. Production Resource Group, LLC*, 736 N.W.2d 313, 321 (Minn. 2007).

Plaintiff makes many general allegations of misrepresentation. The Court will consider the alleged misrepresentations that are sufficiently specific to be potentially actionable. These misrepresentations involve the appraised value of the gems, the description of the gems, and statements by GSN's customer service representative Kenny Brown. As a general matter, the alleged misrepresentations involving the value and descriptions of the gems do not satisfy the reasonable reliance element of intentional misrepresentation because a reasonable purchaser in Plaintiff's position would have taken advantage of Defendant's liberal thirty-day return policy by having the gems examined once they were in her possession and returning any that did not have the value or qualities represented on television. Although Plaintiff knew of the return policy and used it periodically—Defendant's unrebutted calculation indicates that Klinge returned, voided, or canceled about forty percent of her purchases—she failed to take advantage of it for the purchases that are now in dispute. Each alleged misrepresentation also fails for the more specific reasons stated below.

     1. *Representations About Appraised Values*

Defendant sometimes lists the appraised value of gems that it sells on air. Plaintiff asserts that the appraisals for gems she purchased were substantially inflated.

Defendant argues that valuations are inherently subjective and are not actionable misrepresentations. However, none of the cases cited by Defendant involved representations of valuations based on appraisals. Unlike the puffery of a salesperson suggesting that an item is being sold for a fraction of its value, appraisals suggest valuations performed by experts in the industry who base their valuations on some accepted practice or methodology. *Cf. U.S. v. Kail*, 804 F.2d 441, 446–47 (8th Cir. 1986) (holding that evidence of expert's appraisals of coins was reliable because it was based on industry standards).[1] Accordingly, the Minnesota Supreme Court has recognized that an appraisal overstating the value of property is a potentially actionable false statement. *See Hardin Cnty. Sav. Bank v. Hous. & Redevelopment Auth. of City of Brainerd*, 821 N.W.2d 184, 194–95 (Minn. 2012) (reversing dismissal of a complaint because it alleged the ultimate facts of the misrepresentation claim with specificity).

Defendant further argues that any claims against it based on appraisals must fail because Defendant used independent appraisers, suggesting that Plaintiff's cause of action lies against the appraisers instead of GSN. However, nothing in Minnesota's misrepresentation law requires that a defendant be the one who created false information if the defendant otherwise knew the information was false and represented that information to induce a plaintiff to act.[2] Here, Plaintiff is suing Defendant for knowingly

---

[1]   In fact, Defendant's appraiser testified at deposition that he used terminology in his appraisals based on industry standards.

[2]   *See Florenzano v. Olson*, 387 N.W. 2d 168, 173 (Minn. 1986) ("In ordering one's conduct, what these formulas mean is that a person, aware that a representation is or may be

8

representing inflated appraisals of goods it sold. Even if Defendant did not produce the appraisal itself, it can be liable for representing that information if the elements of international misrepresentation are met.

As to the elements, Plaintiff's evidence is that the appraisals performed by her expert found lower values than Defendant's appraisals for almost all the gems she purchased. This evidence may show that Defendant's appraisals were false but by itself does not show that Defendant knew the appraisals were false or had the requisite dishonest intent. *See Florenzano v. Olson*, 387 N.W. 2d 168, 173 (Minn. 1986) (intentional misrepresentation requires "dishonesty or bad faith"). Plaintiff asserts in her brief that Defendant's appraiser was not truly independent of Defendant. If this assertion is supposed to suggest that Defendant and its appraiser were in cahoots to inflate appraisals, there is no record evidence of such a scheme and relationship. Defendant's appraiser specifically testified that GSN never questioned the accuracy of his appraisals except with respect to "typos and other nonvalue related" errors. Plaintiff offers no contradictory evidence showing that Defendant pressured its appraiser or collectively worked with him to produce fraudulent appraisals. Plaintiff provides no other evidence that might show Defendant's knowledge of falsity and dishonest intent with respect to the appraisals.

   2. *Descriptions of the Gems*

Plaintiff argues that Defendant's descriptions of the quality, scarcity, color, and desirability of the gems were intentional misrepresentations.

---

untrue, would disclose doubt or would disclose the source or limitation of the information on which his or her representation relies.").

First, Plaintiff argues that Defendant's descriptions of gems as "Top Gem World Class" and "Top Gem Quality" are specific and actionable statements. Plaintiff cites to deposition testimony by Frank Circelli, who coined the phrase "Top Gem World Class" for Defendant and asserts the phrase means a gem that was in the "[u]pper 10 percent of its class."

Plaintiff has failed to create a trial-worthy issue with respect to these representations for several reasons. First, a vague statement that a good is in the top ten percent of its class is puffery, unless there is some indication that the percentage is based on an objective measure, which is not the case here. *See Marini v. Adamo*, 995 F. Supp. 2d 155, 175–76 (E.D.N.Y. 2014) (representations that defendant was selling "top 1 percent of the 1 percent of coins" was "mere puffery"). Second, there is no evidence that the gems were not in fact in the top ten percent of their class by some relevant measure. Third, a reasonable purchaser in Plaintiff's position would have interpreted the phrases as puffery because words like "top" and "world class" are vague assertions of product superiority.

Plaintiff also argues that Defendant misrepresented the rarity of some gems by referring to them as "Super Rare," "Ultra Rare," and "Very Rare." Plaintiff does not assert that the gems are in fact common. Plaintiff's expert examined eight gemstones labeled by Defendant as rare. For seven of the gems, he concluded that the gem was "somewhat rare," had "relative rarity," was "a rare stone," or was "not commonly seen in the market." For one gem described as "very rare" by Defendant, he concluded that it had "good clarity and cut" but was "not particularly rare," though he did not conclude that it was common or state that the gem was in fact not rare. Plaintiff in effect attacks the

superlatives—super, ultra, and very—and not the "rare" designations themselves. Superlatives are puffery that no reasonable person would rely on. *See All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 868 (7th Cir. 1999). Furthermore, even if these gems were in fact common, there is no evidence that Defendant knew this fact.

Plaintiff argues that one gem was misrepresented by Defendant as "Dark Super Neon" when it is in fact "medium to dark violet." Again, "super" is a superlative that is not actionable as misrepresentation. Neon is a gas that is used in brightly colored electric signs and lights. It is not a specific or absolute characteristic of a gem that can be determined to be true or false. The only potentially actionable part of this statement is the description of the color as "dark" instead of "medium to dark." However, Plaintiff points to nothing in the record showing that Defendant knew the color was incorrect, that she relied on the characterization of the gem's color when she purchased it, or that she was damaged by the misrepresentation because medium-to-dark hues are worth less.

One gem—the Neon Candy Apple Red Tourmaline Cut by Sean 10.19ct—was represented by Defendant as "flawless." In the related context of unfair and deceptive trade practices, the Federal Trade Commission has taken the position that "[i]t is unfair or deceptive to use the word 'flawless' as a quality description of any gemstone that discloses blemishes, inclusions, or clarity faults of any sort when examined under a corrected magnifier at 10-power, with adequate illumination, by a person skilled in gemstone grading." 16 C.F.R. § 23.26(a). Plaintiff's expert concluded that the gem is "not flawless, but lightly included." Assuming that the expert used the industry standard for magnifying power, this conclusion is evidence that the flawless claim is false. The next element of intentional misrepresentation—knowledge of falsity—could have been

satisfied by evidence showing that Defendant knew of the flaw, or with evidence that Defendant had not thoroughly examined the gem and thus could not have confidently claimed the gem was flawless. But Plaintiff does not point to this or any other evidence showing knowledge of falsity. Without this evidence, Plaintiff has not created a trial-worthy issue with respect to Defendant's claim that the gem was flawless.

Plaintiff also asserts that she purchased several color change garnets based on Defendant's misrepresentations about these gems. In particular, Plaintiff argues that Defendant represented that the gems were mined out. However, Plaintiff does not point to specific statements representing that the gems were mined out. In deposition testimony, Plaintiff stated that Defendant "implied that [Defendant] had all of them," but she does not point to a specific factual statement. In her affidavit, Plaintiff quotes extensively from one of Defendant's broadcast about color change garnets, but nothing in the excerpted language is sufficient to support Plaintiff's claim either. The broadcast refers to the gems' recent discovery and the gems "coming out right now," suggesting they were being actively mined, not that they were mined out. Furthermore, if the statement was false, there is no record evidence showing that Defendant knew it was false or had dishonest intent.

Plaintiff also argues that, in a 2009 broadcast, Defendant misrepresented the desirability of color change garnets when a television host stated that "it's already since it's [sic] discovery 9 month ago . . . it's already gone up four times in price." Plaintiff provides an expert report finding that prices for color change garnets rose twenty to thirty percent from 1999 to 2009. However, this expert conclusion fails to show that Defendant's statement was false. Defendant referred to a nine-month period and not a

ten-year period as used by Plaintiff's expert. Nothing in the record shows that the relevant gems did not quadruple in price during those nine months. Furthermore, Defendant was selling a recently discovered "East African Color Change garnet" when the host made the statement about the price quadrupling since its discovery. The reasonable inference is that the host was referring to this type of garnet and not color change garnets generally, which had been on the market for a decade or more. Nothing in Plaintiff's expert report discusses prices specific to this type of garnet.

Finally, Plaintiff argues that she purchased a gem that Defendant's host misrepresented as "clean as a whistle" and falsely stated that "Germans and Russians were getting $25,000 a carat" for the gemstone. However, Plaintiff points to no record evidence that the statement about the Germans and Russians was false. Plaintiff stated in her deposition that she did not know whether Germans and Russians were paying that figure and that she would check with Charles Carmona, her expert. Carmona's expert report makes no mention of Germans or Russians. As for the "clean as a whistle" statement, it is mere puffery.

   3. *Brown's Statements*

Plaintiff's filings in opposition to summary judgment reference three specific conversations with Brown, GSN's customer service representative.

First, Plaintiff asserts that Brown falsely represented to her that Defendant's current "appraisers were the ones that found out the ruby in Queen Elizabeth's crown was actually a spinel." Brown acknowledges making the statement and says that he "thought it to be true" based on "knowledge from the show hosts." A quick internet search would have alerted Klinge to the fact that the gem, known as the Black Prince's Ruby, was

reported to be a spinel more than a century ago.[3] Because Klinge could have easily verified the statement before she purchased and kept any gems in reliance on it, any reliance was not reasonable. *See* Restatement (Second) of Torts § 541, Comment a (a plaintiff "cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation"). Even if Klinge could not have verified the statement in the midst of her phone conversation with Brown, she would have had ample time during the thirty-day return period to discover its falsity and return to GSN any gems that she may have purchased in reliance on Brown's statement.

Second, Brown told Klinge about a customer who bought gemstones from GSN and sold them "a stone here and a stone there" to "stay afloat." Nothing in the record indicates that these representations were false.

Third, Brown represented that a private buyer was coming to Defendant's building to buy a particular gem for his collection, but the gem would be shown on the air first and "we are going to be watching and we are going to say sold on it and we are going to take it" before the private buyer does. Nothing in the record indicates that these representations were false.

In sum, for each alleged instance of intentional misrepresentation, Plaintiff has failed to create a trial-worthy issue.

### E. Count VI—Negligent Misrepresentation

---

[3] A Google search turned up numerous publications from the early-twentieth and late-nineteenth centuries referring to the Black Prince's Ruby as a spinel. For one example, see Leopold Claremont, *The Gem-Cutter's Craft* 171 (1906), the full text of which is available for free on Google. In any event, the stone is sufficiently valuable that it remains locked in the Tower of London.

Plaintiff alleges negligent misrepresentation. Minnesota law provides: "A buyer may not bring a common law misrepresentation claim against a seller relating to the goods sold or leased unless the misrepresentation was made intentionally or recklessly." Minn. Stat. § 604.101, subd. 4. A "buyer" is "a person who buys or leases or contracts to buy or lease the goods that are alleged to be . . . the subject of a misrepresentation." *Id.,* subd. 1(b). A seller is "a person who sells or leases or contracts to sell or lease the goods that are alleged to be . . . the subject of a misrepresentation." *Id.,* subd. 1(f). Goods are "tangible personal property, regardless of whether that property is incorporated into or becomes a component of some different property." *Id.,* subd. 1(c).

Under the statute, Plaintiff is a buyer, Defendant is a seller, and the jewels and gems at issue are goods. Thus, the statute bars Plaintiff's negligent misrepresentation claim against Defendant.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's motion for summary judgment [Docket No. 32] is GRANTED and Plaintiff's claims are DISMISSED with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 31, 2014

                                                          s/Joan N. Ericksen
                                                          JOAN N. ERICKSEN
                                                          United States District Judge